Thad RICHARDSON,
Petitioner-Appellant,

v.

Eddie LUCAS, Warden, Mississippi State
Penitentiary, et al.,
Respondents-Appellees.

No. 83–4619
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1984.

754

Thad Richardson, Jr., pro se.

Larry M. Wilson, William S. Boyd, III, Asst. Attys. Gen., Jackson, Miss., for respondents-appellees.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

After his conviction for burglary of a dwelling was affirmed by the Mississippi Supreme Court, Thad Richardson sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following the district court's refusal to issue the writ, Richardson appealed. On appeal, Richardson argues that his fifth amendment right against self-incrimination was denied by the state trial court's refusal to instruct the jury, as he requested, that his failure to testify was not to be "considered unfavorably."

Richardson, an indigent, also argues that he was denied his sixth amendment right to counsel because the state trial court refused to appoint a specific attorney from the legal aid society to represent him. Be-cause Richardson did not wish to be represented by the attorney whom the court had appointed for that purpose, he appeared *pro se*, with his appointed attorney acting as advisory counsel. Richardson concludes by arguing that the trial judge's conduct denied him a fair trial. We affirm.

## I.

Having chosen not to testify in his defense, Richardson requested that the jury be given the following instruction:

The Court instructs the Jury that the fact that the defendant does not testify in this cause is not to be considered unfavorably to him by the Jury in the trial of the case.

The trial court refused to give the instruction. Richardson claims that the trial court's refusal violated his fifth amendment right against self-incrimination.

The Supreme Court has established that the fifth amendment requires, after a proper request, that a trial judge instruct the jury that no adverse inference can be drawn from a defendant's failure to testify in his behalf. *See Carter v. Kentucky,* 450 U.S. 288, 300, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981).

In this case, the appellees argue that the error identified by *Carter* does not require automatic reversal. They contend that Richardson's conviction can be affirmed if it can be concluded, based upon the entire record, that the error was harmless beyond a reasonable doubt. Our research has disclosed that no federal appellate court has reached the question of whether the refusal to give a "failure to testify" instruction can be harmless error.[1]

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that prosecutorial comment on the defendant's failure to testify, a much more pronounced violation of the

---

1. In *United States v. Bain,* 596 F.2d 120, 121 (5th Cir.1979), a lower court's refusal to give a "failure to testify" instruction as required by 18 U.S.C. § 3841 resulted in the reversal of a conviction. In *Bain,* no analysis was made to determine whether the error was harmless beyond a reasonable doubt. Thus, the question remains open in this circuit, as it does in the Supreme Court, as to whether a harmlessness-analysis is appropriate in determining the effect of a refusal to give a "failure to testify" instruction.

fifth amendment privilege against self-incrimination than the refusal to give the "failure to testify" instruction in this case, could be harmless error. Noting that every state and the United States[2] had enacted harmless error statutes, the Court stated:

> All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

386 U.S. at 22, 87 S.Ct. at 827; *see also United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

■ *Chapman* teaches us that prosecutorial comment on a defendant's failure to testify can be harmless error. 386 U.S. at 23, 87 S.Ct. at 827–28. A similar result is appropriate when a judge erroneously refuses to instruct the jury, following a proper request, not to draw an unfavorable inference from a defendant's refusal to testify. The two types of error both implicate the fifth amendment's privilege against self-incrimination. Furthermore, the *Chapman* error is the more egregious. There, the prosecution openly informs the jury of the defendant's failure to testify and of the inferences of guilt which can be drawn therefrom. After reading *Chapman* and considering the two types of error involved, we can perceive no reason for distinguishing the two types insofar as the application of the harmless error doctrine is concerned.

■ Having determined that a refusal to give a requested "failure to testify" instruction can be harmless error, we must decide whether the error was harmless in this case. For a constitutional error to be harmless, "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828. For the error to be harmless beyond a reasonable doubt, a court must "decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.) (en banc), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).

The uncontradicted evidence adduced at the trial through the testimony of John and Higdon Hudson revealed that on August 19, 1978, as John Hudson and his father, Higdon, arrived at Higdon's house in Summit, Mississippi, they noticed a Buick automobile speeding away from behind the house with its trunk lid raised and a television set in the trunk. John got in his automobile and pursued the Buick. In the meantime, Higdon discovered that his television, three guns, a chain saw and two jewelry boxes had been stolen. After getting his pistol, Higdon left the house to find his son.

Following the Buick, John saw the car get stuck in a ditch and a man then leave the car and run into the woods. John pursued the man (later identified by both Hudsons as Richardson), captured him, and brought him back to the Buick where they were joined by Higdon. Both Higdon and John testified that Richardson pleaded with them to allow him to return the stolen property to Higdon's home and begged them not to have him arrested and prosecuted. Although John was holding a pistol, Richardson ran off into the woods. Wisely unwilling to fire directly at him, but rather firing his pistol into the ground, John allowed Richardson to escape.

The next day, Richardson's brother reported that the Buick which had been driven by the burglar had been stolen by Richardson. Richardson, a resident of New Orleans, had been in Summit on the day

**2.** 28 U.S.C. § 2111.

Higdon's home was burglarized. Richardson was subsequently arrested and indicted for burglary. At the trial, both John and Higdon Hudson positively identified Richardson as the man John had caught in the woods.

■ This evidence is sufficient to support Richardson's conviction and is so overwhelming as to establish guilt beyond a reasonable doubt. Richardson's failure to testify, especially in view of his constant claims that the Hudsons were lying,[3] had no effect on the jury's appraisal of the Hudsons' credibility. From examining the record, we are convinced that there is no reasonable possibility that the giving of a "failure to testify" instruction would have affected the verdict of guilty for Richardson. Therefore, the error in refusing to give the instruction was harmless.

## II.

At arraignment, Donald Jones, a member of the Pike County, Mississippi bar was appointed to represent Richardson. Approximately a week later, Richardson filed a motion in which he asked to be allowed to act as co-counsel. Jones then moved to withdraw as counsel because Richardson had refused his advice, constantly tried to represent himself and stated that he had filed a civil action against Jones. At a hearing several days later, Richardson stated that he wanted to be co-counsel and that he did not wish to be represented by Jones. He also asked that a specific attorney from the legal aid society be appointed to represent him. The state trial judge denied Jones's request to withdraw as Richardson's counsel. At the same time, he ordered that Richardson be allowed to act as his own attorney, with Jones acting in an advisory capacity.

At trial, Richardson again stated that he did not want Jones to represent him. The trial proceeded, however, with Richardson performing most of the functions which are part of an attorney's traditional role. Richardson cross-examined the state's witnesses and examined witnesses that he called as defense witnesses. The roles of Jones and another attorney, John Price, who were present throughout the trial as advisory counsel, were limited to participation in the selection of a jury and the preparation of jury instructions. In effect, by refusing their participation and aid, Richardson appeared *pro se* and waived counsel.

Richardson now complains that he did not knowingly and intelligently waive counsel and did not wish to represent himself. He argues that because the court failed to protect him against himself, his sixth amendment right to counsel was violated.

■ Although the sixth amendment's right to counsel in criminal cases is absolute, an accused's right to a particular counsel is not. *United States v. Silva,* 611 F.2d 78, 79 (5th Cir.1980); *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.1979), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). Defendants may waive their right to counsel and defend against a criminal charge *pro se. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, a waiver must not only be voluntary but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

Here, the state trial court explained and presented Richardson with a clear choice between the alternatives: representation by Jones and Price, or *pro se* representation with Jones and Price serving as advisory counsel. Richardson was repeatedly informed by the trial court that new counsel would not be appointed for him. The record also reveals that Richardson was aware that the consequence of not allowing

---

**3.** These claims were made by Richardson during his direct and cross-examination of the Hudsons as to whether he was the man John Hudson had captured in the woods and the man who had begged the Hudsons not to have him arrested and prosecuted for burglarizing Higdon Hudson's home. He also stated in the presence of the jury that he was in New Orleans when Higdon Hudson's home was burglarized. In other words, Richardson had the benefit of testifying without the disadvantage of submitting to cross-examination.

Jones and Price to act as his counsel was self-representation. In spite of this, Richardson continued to ask that Jones and Price be removed and that a specific attorney be appointed to replace them.

█ In the particular facts and circumstances, Richardson's decision to refuse, for all practical purposes, the aid of Jones and Price, and to represent himself was a knowing and intelligent waiver of his right to counsel. The trial court repeatedly encouraged Richardson to accept Jones's and Price's services. Richardson was urged to listen carefully to their advice concerning the law and procedures to be followed. He was advised that Jones and Price were schooled in the law. At the same time, Richardson indicated that his knowledge of the law was limited and that he was aware of the advantages of having a trained attorney. The record also reveals, primarily from the many motions he prepared and filed, that Richardson was literate and familiar with the criminal justice system.[4] Under these circumstances, it must be concluded that Richardson, sufficiently understanding the risks of self-representation, made a knowing and intelligent waiver of counsel.

█ Richardson's decision to waive his right to counsel and proceed *pro se* was also voluntary. A defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of that right. *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976), *citing United States ex rel. Testamark v. Vincent*, 496 F.2d 641 (2d Cir.1974). Here, there is no indication that Jones and Price were not qualified attorneys or that Jones had not been handling Richardson's defense in a capable manner.[5] The trial judge knew both of them to be competent and qualified attorneys. Because Richardson offered no good cause for his refusal to proceed with Jones and Price as his counsel, it must be concluded that he voluntarily waived his sixth amendment right to counsel.

█ Assuming that his waiver of counsel was not constitutionally valid, we conclude that the error in not requiring such a waiver was harmless beyond a reasonable doubt. From examining the record, we are convinced that there is no reasonable possibility that representation by counsel would have affected the verdict of guilty for Richardson. Consequently, if the waiver was not constitutionally valid, we conclude that the trial court's error in accepting such a waiver and allowing Richardson to represent himself was harmless beyond a reasonable doubt. *United States v. Gipson*, 693 F.2d 109, 112 (10th Cir.1982), *cert. denied*, 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983), *citing Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828.

## III.

Richardson complains that certain conduct by the trial judge denied his right to a fair trial. He specifically refers to the judge's admonitions to sit down, to step away from witnesses while asking questions, and to stop badgering witnesses. He complains that the judge interrupted his cross-examination of certain witnesses and often undertook the cross-examination of witnesses. Richardson also complains of the trial judge's summary denial of his many motions. We have considered his arguments in this regard and, after reviewing the record, find them to be without merit.

For the above and foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**4.** These motions included a motion to dismiss false detainer, a motion for preliminary hearing, a motion for omnibus hearing, a writ of mandamus for physical examination, a motion to quash indictment, a motion to act as co-counsel, a motion to summons, a motion to dismiss, and a motion for change of venue.

**5.** Richardson charged that Jones was not adequately investigating his case. This charge was not substantiated.