[No. B079341. Second Dist., Div. Five. May 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
BYRON JAMES WILDER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portions.

**COUNSEL**

Steven J. Renick, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Mitchell Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.**—Defendant, Byron James Wilder, appeals his drug conviction and findings concerning enhancements imposed because of his substantial prior record of criminality. In the published portion of this opinion, we conclude that the trial court's failure to advise defendant, who represented himself at trial, of the disadvantages of self-representation where the waiver of counsel was voluntary, is subject to the harmless error standard of review set forth in *Chapman* v. *California* (1967) 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-711, 87 S.Ct. 824]. We affirm the judgment.

When the testimony is viewed in a light most favorable to the prosecution (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573-574, 99

S.Ct. 2781]; *Taylor* v. *Stainer* (9th Cir. 1994) 31 F.3d 907, 908; *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1083 [25 Cal.Rptr.2d 867, 864 P.2d 40]), the following was the evidence before the jury: two undercover narcotics officers stopped their car; within one second, defendant approached the undercover police officers; in this area of the city, it was typical for a narcotics trafficker to approach an undercover car once it was stopped; defendant said, " '[H]ow much?' "; the undercover officer, based on her experience, concluded the question " 'How much?' " was an inquiry concerning the quantity of drugs she desired to purchase; she responded, " 'I need a 20' "; defendant stood next to the car door as the codefendant, Mario Ruiz, approached and asked " 'Are you a cop?' "; she responded, " 'No' "; Mr. Ruiz handed her two pieces of rock cocaine totaling .7 grams in weight; she handed Mr. Ruiz a $20 bill; throughout this time period, defendant stood immediately to Mr. Ruiz's right side; both defendant and Mr. Ruiz walked away together in the same direction; as he walked with defendant, Mr. Ruiz placed the $20 bill in a crack in a wall; and when defendant was searched, "three small rock-like objects resembling . . . cocaine" were recovered from one of his pockets. No defense was presented.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

At his preliminary examination, defendant was represented by a deputy public defender. At the superior court arraignment, the same deputy public defender was present and prepared to accept court appointment to represent defendant. After a codefendant entered a plea of not guilty, the following transpired: "Mr. KOLLER [deputy district attorney]: Mr. Byron James Wilder, is that your true name—is that your correct name? [¶] Mr. WILDER: Yes. [¶] Mr. KOLLER: You are also here to be advised of the charges against you and you are also charged in this case, case No. BA070994 with one count of the sale or transportation of cocaine base, a felony in violation of Health & Safety Code section 11352A. [¶] As to you, there are additional allegations within the meaning of Health & Safety Code section[s] 11370.2 and 667.5B which allege that you have been to prison previously and that you have been convicted of narcotics offenses previously. [¶] Do you understand the nature of the charges against you, sir? [¶] Do you understand what you are charged with? [¶] I'm not asking you— [¶] Mr. WILDER: No, I don't know what I'm charged with. [¶] Mr. KOLLER: You are charged with selling cocaine base. Do you understand that so far? [¶] Mr. WILDER: Yes. [¶] Mr. KOLLER: That is what you are charged with. [¶] Mr. WILDER: Yes. [¶] Mr. KOLLER: And it has been alleged that you have been to prison before and that you were convicted of other narcotics offenses specifically sale or transportation of marijuana. [¶] Mr. WILDER: That has nothing to do with

---

*See footnote, *ante*, page 489.

what I'm charged with. [¶] MR. KOLLER: Yes, it does. It adds an additional six years to the possible sentence that you could receive because of your prior record. [¶] I want to be sure that you understand that. Not only is it alleged that you committed this crime, but crimes in the past which could increase the punishment that the court could impose should you be found guilty. [¶] MR. WILDER: Your honor, I would like to ask if I can have my attorney dismissed because I don't feel she has represented me. [¶] THE COURT: First of all, you have not even been arraigned. She can't represent you until the case is assigned to her. The case has not even been—it has just been assigned to her. [¶] MR. WILDER: I don't want to go to court with her as my attorney. [¶] THE COURT: You don't know anything about her. [¶] MR. WILDER: Well, she has not given me a copy of the transcripts. [¶] THE COURT: She does not have a copy of the transcript. [¶] MR. WILDER: I mean what was said. [¶] THE COURT: This is here for arraignment. [¶] MR. WILDER: Okay. [¶] THE COURT: Whatever happens in the municipal court eventually she will get a copy of the transcript. She doesn't have a copy of the transcript. [¶] The court does not even have a copy of the transcript. [¶] MR. WILDER: She told me she does not give copies of the transcripts to her clients. I would like to have that. [¶] THE COURT: That is something that you could have. [¶] MR. WILDER: I'm here on the 9th. She does not care. [¶] THE COURT: If you want to hire an attorney— [¶] MR. WILDER: Could I have a state appointed attorney? [¶] THE COURT: No. You have a state appointed attorney. I'm just appointing her. [¶] You know, it amazes me how you guys come in here, you look for miracles when you walk through the door. [¶] She has just been appointed. The first thing you are going to tell me is she is not representing you. How could she possibly represent you[?] She knows nothing about you at this point. She just received the information. [¶] She has not received the transcript. You come through the door looking for miracles. If you go out and hire the best possible attorney you could ever hire, at this stage of the proceeding that attorney would be in the same position that Miss Gee [the deputy public defender] is in. She knows nothing about your case. She has not had an opportunity to read the transcript, but yet you want a miracle. [¶] You want a miracle and from an attorney that knows nothing about your case. [¶] Your case is the same as any other case. She has to have an opportunity to read the preliminary hearing transcript and she has to have an opportunity to talk to you about it. She has to have an opportunity to investigate. [¶] That is the bottom line. [¶] Now you have two choices. She can represent you or you can represent yourself. If you think that you can do a better job, then you can represent yourself. Those are the two choices that you have. [¶] Now which is it going to be? [¶] MR. WILDER: I think that I would probably be better off representing myself. [¶] THE COURT: Do you want to represent yourself? [¶] MR. WILDER: Yes. [¶] THE COURT: Very well. You certainly have that opportunity. [¶] You will be

given a pro per status. You will be permitted to represent yourself. [¶] Now give him a copy of the— [¶] Ms. GEE: Your honor, I would ask that this matter be put over for a short pretrial date so that I can give him a copy of my file. [¶] I need to copy the arrest report and the other matters before I —so that I can keep a copy for our files. [¶] THE COURT: You do not need a copy for your files. [¶] Ms. GEE: I may eventually. [¶] THE COURT: The point that I'm making at this point is he is his own attorney. Turn everything that you have over to him. That is his request. I'm granting his request. [¶] Ms. GEE: Again I would ask that this matter be put over. [¶] THE COURT: You don't have any authority to ask anything at this point, Ms. Gee. The only thing that you can do is to give him what he is asking for. That is what he is asking for. You give it to him. Let him represent himself. [¶] Apparently he feels that he is eminently more qualified to represent himself than you are. So let him represent himself. [¶] Now you may arraign Mr. Wilder now that he is in pro. per. [¶] MR. KOLLER: Mr. Wilder, the paper that I gave you is called a written information. It states all of the charges against you. [¶] I could read all of those charges to you, but they are all there in writing. [¶] I have summarized what you are charged with.”

■ Defendant argues the trial court failed to advise him of the potential dangers of self-representation. ■ Defendant relies upon the following language in *Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525], where the United States Supreme Court held: “Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ‘he knows what he is doing and his choice is made with eyes open.’ [Citation.]” In *Godinez* v. *Moran* (1993) 509 U.S. __, __ [125 L.Ed.2d 321, 333, 113 S.Ct. 2680] the United States Supreme Court held: “In addition to determining that a defendant who seeks to . . . waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. . . . *Faretta* [v. *California*, *supra*, 422 U.S. at p.] 835 . . . (waiver of counsel).” At another point in *Godinez*, the court held: “The purpose of the ‘knowing and voluntary’ inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision in uncoerced. See *Faretta* v. *California*, *supra*, [422 U.S.] at [p.] 835 . . . (defendant waiving counsel must be ‘made aware of the dangers and disadvantages of self-representation, so that the record will establish that “he knows what he is doing and his choice is made with eyes open’ ”) . . . .” (*Godinez* v. *Moran*, *supra*, 509 U.S. at p. __ [125 L.Ed.2d at p. 333] fn. 12, original italics.)

The California Supreme Court has likewise noted, “A defendant may challenge the grant of a motion for self-representation on the basis that the

record fails to show that the defendant was made aware of the risks of self-representation." (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1224 [259 Cal.Rptr. 669, 774 P.2d 698]; accord, *People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1048 [17 Cal.Rptr.2d 174, 846 P.2d 756], reversed on another point in *Stansbury* v. *California* (1994) 511 U.S. __, __ [128 L.Ed.2d 293, 298-301, 114 S.Ct. 1526]; *People* v. *Pinholster* (1992) 1 Cal.4th 865, 928-929 [4 Cal.Rptr.2d 765, 824 P.2d 571].) In *Stansbury*, our Supreme Court described the necessary record that must be present in order for a defendant to properly waive the right to counsel: "No particular form of words is required in admonishing a defendant who seeks to forego the right to counsel and to represent himself [or herself]. 'The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' [Citation.]" (*People* v. *Stansbury*, *supra*, 4 Cal.4th at p. 1048.)

█ Applying the foregoing rules to the present case, it is clear that the record does not reflect that defendant " 'understood the disadvantages of self-representation, including the risks and complexities of the particular case.' " (*Ibid.*) In this case, the complete absence of *any* advisement as to the dangers and disadvantages of self-representation fell outside the ambit of cases where the California Supreme Court has held the record was sufficient to support a constitutional waiver of the right to counsel. (*Id.* at pp. 1048-1049; *People* v. *Pinholster*, *supra*, 1 Cal.4th at p. 929; *People* v. *Bloom*, *supra*, 48 Cal.3d at p. 1225.) Therefore, defendant's waiver of his right to counsel did not comport with the duty to advise him of the dangers of self-representation as interpreted in *Faretta* v. *California*, *supra*, 422 U.S. at page 835 [45 L.Ed.2d at pages 581-582].

However, it bears considerable emphasis that the present case only involves the issue of whether the waiver of counsel was made intelligently because of the sole failure to advise of the dangers of self-representation— there is no issue of voluntariness. *Godinez* makes it clear that a trial court granting a timely and unequivocal *Faretta* request must assure itself that the waiver of counsel is "knowing and voluntary." (*Godinez* v. *Moran*, *supra*, 509 U.S. at p. __ [125 L.Ed.2d at pp. 333-334].) The previously described colloquy between defendant, the court, and the deputy public defender proves beyond dispute the waiver was voluntary, one of the two requirements for a proper waiver of the right to counsel in the *Faretta* context identified in *Godinez*. In varying circumstances, courts have held waivers of counsel are voluntary when they occur under the circumstances present at defendant's arraignment in this case. █ If a defendant is offered an attorney, refuses to accept such, and demands to proceed in pro se, the waiver of the right to counsel is voluntary. (*Richardson* v. *Lucas* (5th Cir.

1984) 741 F.2d 753, 757; *Maynard* v. *Meachum* (1st Cir. 1976) 545 F.2d 273, 278; *United States* ex rel. *Testamark* v. *Vincent* (2d Cir. 1974) 496 F.2d 641, 643-644; *Kates* v. *Nelson* (9th Cir. 1970) 435 F.2d 1085, 1088; *Burns* v. *State* (1989) 300 Ark. 469 [780 S.W.2d 23, 24]; *State* v. *Harper* (La. 1980) 381 So.2d 468, 471; *Fowlkes* v. *State* (1988) 311 Md. 586 [536 A.2d 1149, 1159].) ▆ Hence, there is no constitutional issue as to whether the waiver was voluntary—it was. The problem is that no admonition concerning the dangers and disadvantages of self-representation was presented to defendant and the record as a whole fails to reflect he was aware of such at the time of the waiver of counsel.

The remaining question is what standard of reversible error to apply. Defendant makes two arguments. To begin with, he contends that we must apply the reversible error per se standard based on the United States Supreme Court decision of *Rose* v. *Clark* (1986) 478 U.S. 570, 576-579 [92 L.Ed.2d 460, 469-470, 106 S.Ct. 3101]. In the alternative, defendant argues we should apply the standard of review utilized when reviewing the validity of a guilty plea as articulated in *North Carolina* v. *Alford* (1970) 400 U.S. 25, 31 [27 L.Ed.2d 162, 167-168, 91 S.Ct. 160] and *Brady* v. *United States* (1970) 397 U.S. 742, 747-748 [25 L.Ed.2d 747, 755-756, 90 S.Ct. 1463]. Under *Alford* and *Brady,* a guilty plea will not be set aside if the record shows under the totality of the circumstances the plea was intelligently and voluntarily entered. (See *People* v. *Howard* (1992) 1 Cal.4th 1132, 1174-1180 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) The Attorney General argues that we should apply the standard of reversible error set forth in *Chapman* v. *California, supra,* 386 U.S. at pages 21-24 [17 L.Ed.2d at pages 708-711]. In *Rose* v. *Clark, supra,* 478 U.S. at page 583 [92 L.Ed.2d at page 474], the United States Supreme Court described the *Chapman* test as follows: "[W]e have held that '*Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless.' [Citation.] The question is whether, 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt.' [Citation.]" We agree with the Attorney General that the correct test of reversible error is that set forth in *Chapman* when a trial judge neglects to ensure that a defendant is advised of the dangers and disadvantages of self-representation as required by *Faretta* v. *California, supra,* 422 U.S. at page 835 [45 L.Ed.2d at pages 581-582], but the waiver of the right to counsel is voluntary.[1]

First, defendant argues that the decision of the United States Supreme Court in *Rose* v. *Clark, supra,* 478 U.S. at pages 576-579 [92 L.Ed.2d at

---

[1]The California Courts of Appeal are in disagreement as to whether the standard of reversal is that set forth in *Chapman* v. *California, supra,* 386 U.S. at page 22 [17 L.Ed.2d at pages 709-710] or reversible error per se when a pro se defendant was not advised on the dangers and disadvantages of self-representation. In *People* v. *McArthur* (1992) 11 Cal.App.4th 619, 628-630 [14 Cal.Rptr.2d 203] and *People* v. *Cervantes* (1978) 87 Cal.App.3d 281, 291-294 [150 Cal.Rptr. 819], the Fifth and Second Districts of the Court of Appeal held that the

pages 469-471] requires we apply a test of reversible error per se to the failure to advise him of the dangers and disadvantages of self-representation even though the waiver was voluntary. Defendant relies on the following language in *Rose*: "Despite the strong interests that support the harmless-error doctrine, the Court in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. [*Chapman* v. *California, supra,*] 386 U.S. at p. 23, fn. 8 [17 L.Ed.2 at p. 710], citing *Payne* v. *Arkansas*, 356 U.S. 560, 568-569 (1958) [2 L.Ed.2d 975, 981-982, 78 S.Ct. 844] (introduction of coerced confession); *Gideon* v. *Wainwright*, 372 U.S. 335, 342-345 (1963) [9 L.Ed.2d 799, 803-806, 83 S.Ct. 792] (complete denial of right to counsel); *Tumey* v. *Ohio*, 273 U.S. 510, 522-535 (1927) [71 L.Ed. 749, 754-759, 47 S.Ct. 437, 50 A.L.R. 1243] (adjudication by biased judge). This limitation recognizes that some errors necessarily render a trial fundamentally unfair. The State of course must provide a trial before an impartial judge, *Tumey* v. *Ohio, supra,* with counsel to help the accused defend against the State's charge, *Gideon* v. *Wainwright, supra.* Compare *Holloway* v. *Arkansas*, 435 U.S. 475, 488-490 (1978) [55 L.Ed.2d 426, 436-438, 98 S.Ct. 1173] with *Cuyler* v. *Sullivan*, 446 U.S. 335, 348-350 (1980) [64 L.Ed.2d 333, 346-348, 100 S.Ct. 1708], Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, see *Powell* v. *Alabama*, 287 U.S. 45, 57-73 (1932) [77 L.Ed. 158, 164-173, 53 S.Ct. 55, 84 A.L.R. 527], and no criminal punishment may be regarded as fundamentally fair. Harmless-error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury. See *Delaware* v. *Van Arsdall* [(1986) 475 U.S. 673, 681 (89 L.Ed.2d 674, 684-685, 106 S.Ct. 1431)] (constitutional errors may be harmless 'in terms of their effect on the *fact-finding process at trial'*) (emphasis added) *Chapman* [v. *California,*] *supra,* at [p. 24 (17 L.Ed.2d at pp. 710-711)] (error is harmless if, beyond a reasonable doubt, it 'did not *contribute to the verdict obtained*' (emphasis added). [¶] Similarly, harmless-error analysis presumably would not apply if a court directed a verdict for the

*Chapman* standard of reversible error applied when a defendant who proceeded in propria persona was not warned of the dangers of self-representation. By contrast in *People* v. *Hall* (1990) 218 Cal.App.3d 1102, 1108-1109 [267 Cal.Rptr. 494], our colleagues in Division Three of this appellate district applied a reversible error per se standard. In *Hall,* the defendant's waiver of the right to counsel cannot be categorized as voluntary. Unlike the present case, the defendant in *Hall* was not offered counsel and then rejected the opportunity to be represented by an attorney. Three federal court of appeals circuits have applied a reversible error per se test for reversal of an otherwise valid conviction. (*Gilbert* v. *Lockhart* (8th Cir. 1991) 930 F.2d 1356, 1359-1360; *United States* v. *Allen* (10th Cir. 1990) 895 F.2d 1577, 1579; *United States* v. *Balough* (9th Cir. 1987) 820 F.2d 1485, 1489-1490.) By contrast, the Fifth Circuit has explicitly applied the *Chapman* harmless error test. (*Richardson* v. *Lucas, supra,* 741 F.2d at pp. 756-757; accord, *Wilson* v. *Mintzes* (6th Cir. 1985) 761 F.2d 275, 285, fn. 15.)

prosecution in a criminal trial by jury. We have stated that a 'trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.' [Citations.] . . . [¶] We have emphasized, however, that while there are some errors to which *Chapman* does not apply, they are the exception and not the rule. [Citation.] Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis." (*Id.* at pp. 577-579 [92 L.Ed.2d at pp. 470-471], fn. omitted.) Relying on the foregoing language, defendant argues that since he did not have counsel, the reversible error per se standard must apply even though the waiver of the right to an attorney was entirely voluntary.[2]

We disagree that the cited language is controlling. *Rose* did not involve the issue of the failure to advise a defendant who desired to proceed in pro se of the dangers and disadvantages of self-representation. Rather, *Rose* involved the issue of whether the reversible error per se standard would apply to a jury instruction which shifted the burden of proof to the defendant as prohibited by the decisions of *Sandstrom* v. *Montana* (1979) 442 U.S. 510, 523-524 [61 L.Ed.2d 39, 50-51, 99 S.Ct. 2450] and *Francis* v. *Franklin* (1985) 471 U.S. 307, 313-316 [85 L.Ed.2d 344, 352-355, 105 S.Ct. 1965].[3] The fact that the present issue concerning which standard of reversal to

[2]United States Supreme Court decisions interpreting *Rose* v. *Clark, supra,* at pages 576-584 [92 L.Ed.2d at pages 469-475] do not change the result in this case. In *Young* v. *U.S.* ex rel. *Vuitton et Fils S. A.* (1987) 481 U.S. 787, 809-814 [95 L.Ed.2d 740, 759-763, 107 S.Ct. 2124], the court refused to apply a harmless error standard in a copyright infringement suit where a judge appointed a financially interested party to act as a contempt prosecutor. In *Bank of Nova Scotia* v. *United States* (1988) 487 U.S. 250, 256-257 [101 L.Ed.2d 228, 238-239, 108 S.Ct. 2369], citing *Rose*, the court refused to apply a reversible error per se standard to irregularities before a grand jury. Three instructional error cases involving unconstitutional presumptions decided after *Rose; Pope* v. *Illinois* (1987) 481 U.S. 497, 501-502 [95 L.Ed.2d 439, 445-446, 107 S.Ct. 1918], *Carella* v. *California* (1989) 491 U.S. 263, 266 [105 L.Ed.2d 218, 222, 109 S.Ct. 2419], and *Yates* v. *Evatt* (1991) 500 U.S. 391, 404-409 [114 L.Ed.2d 432, 449-450, 111 S.Ct. 1884], overruled on another point in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 73, footnote, 4 [116 L.Ed.2d 385, 399, 112 S.Ct. 475], applied the *Chapman* test. In *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 306-312 [113 L.Ed.2d 302, 328-333, 111 S.Ct. 1246], the Supreme Court applied *Chapman* to a case where an involuntary confession was erroneously admitted as evidence. In *Sullivan* v. *Louisiana* (1993) 508 U.S. __ [124 L.Ed.2d 182, 190-191, 113 S.Ct. 2078], the court held that a failure to correctly instruct on the proof beyond a reasonable doubt standard was reversible error per se. (Cf. *Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583, 590-601, 114 S.Ct. 1239].) None of these decisions involve the question of whether the failure to advise a defendant who voluntarily waives appointment of counsel, but is not told of the dangers of self-representation, may secure a reversal even though had the proper advisement been given, the right to an attorney would still have been waived.

[3]In *Sandstrom* v. *Montana, supra,* 442 U.S. at pages 523-524 [61 L.Ed.2d at pages 50-51], the United States Supreme Court held that a defendant was denied due process when a jury

apply when the defendant was not advised of the dangers of self-representation was not present in *Rose* is of material consequence. The United States Supreme Court has repeatedly emphasized that its decisions are not controlling authority for propositions not considered by it in the case. (*Landgraf* v. *USI Film Products* (1994) 511 U.S. ___, ___ [128 L.Ed.2d 229, 252, 114 S.Ct. 1483] ["the 'maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used' "]; *R. A. V.* v. *St. Paul* (1992) 505 U.S. 377, 386, fn. 5 [120 L.Ed.2d 305, 320, 112 S.Ct. 2538] [it is "contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned"]; *United States* v. *Stanley* (1987) 483 U.S. 669, 680 [97 L.Ed.2d 550, 565, 107 S.Ct. 3054] ["no holding can be broader than the facts before the court"]; *Adams* v. *Texas* (1980) 448 U.S. 38, 45, fn. 3 [65 L.Ed.2d 581, 590, 100 S.Ct. 2521] [issue of applicability of *Witherspoon* v. *Illinois* (1968) 391 U.S. 510, 519 [20 L.Ed.2d 776, 783, 88 S.Ct. 1770] to Texas death qualification process not foreclosed by that decision "because the issue was not explicitly raised in that case."]) Simply stated, *Rose* is not controlling authority because the present issue was not discussed or raised in that case, which involved an entirely different question involving instructional error.[4]

Further, when the issue of the right to counsel was discussed in *Rose*, it occurred in the context of *Gideon* v. *Wainwright* (1963) 372 U.S. 335, 342-345 [9 L.Ed.2d 799, 803-804, 83 S.Ct. 792] which involves the refusal of a state court judge to appoint an attorney for an indigent accused. (*Rose* v. *Clark, supra,* 478 U.S. at p. 577 [92 L.Ed.2d at p. 470].) When identifying the types of situations where the reversible error per se standard would apply, the Supreme Court used the words "complete denial of right to counsel" (*ibid.*) or "denial of counsel." (*Id.* at p. 577, fn. 6 [92 L.Ed.2d at p. 470].) The context of the aforementioned language, which is cited as controlling authority by defendant in the present case, does not support the proposition that he should receive the benefit of the automatic reversal of his conviction. The references by the Supreme Court in *Rose*, an instructional error case, to the duty of the state to "provide counsel" and to a defendant

instruction indicated he was presumed to have acted with malice. In *Francis* v. *Franklin, supra,* 471 U.S. at pages 313-316 [85 L.Ed.2d at pages 352-355], the court, citing *Sandstrom*, held that an instruction which stated that the defendant was presumed to act with sound mind was violative of the due process clause of the Fourteenth Amendment.

[4]The United States Supreme Court jurisprudence cited in the body of this opinion to the effect that one of its opinions may not be cited as authority for propositions not considered therein is fully consistent with California decisional authority. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753-755; *People* v. *Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769]; *People* v. *Saunders* (1993) 5 Cal.4th 580, 592, fn. 8 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

who "has counsel" were made in the context of a discussion of the denial of the request for an attorney such as occurred in *Gideon*; not the neglect of a trial court to advise an accused of the dangers of proceeding in pro se when the waiver of the right to counsel was voluntary. To demonstrate how unrelated the reversible error per se analysis in *Rose* is to the failure to advise a defendant of the dangers of self-representation; one must only note that *Faretta* was never even mentioned in *Rose*.

Apart from the fact *Rose* does not address the issue before this court, other language in that opinion strongly suggests that the automatic reversal standard would be inapplicable to an error such as the one presently before us. Citing *United States* v. *Hasting* (1983) 461 U.S. 499, 509 [76 L.Ed.2d 96, 106, 103 S.Ct. 1974], the United States Supreme Court noted in *Rose* that, "[W]hile there are some errors to which *Chapman* does not apply, they are the exception and not the rule." (*Rose* v. *Clark*, *supra*, 478 U.S. at p. 578 [92 L.Ed.2d at p. 471].) The language from *Hasting*, a case involving improper prosecutorial comment on a defendant's failure to testify, which was cited to in *Rose*, is as follows: "*Chapman* reflected the concern, later noted by Chief Justice Roger Traynor of the Supreme Court of California, that when courts fashion rules whose violations mandate automatic reversals, they 'retrea[t] from their responsibility, becoming instead "impregnable citadels of technicality."' R. Traynor, The Riddle of Harmless Error 14 (1970) (quoting Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A. B. A. J. 217, 222 (1925)). [¶] Since *Chapman*, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations, [citations]. The goal, as Chief Justice Traynor has noted, is 'to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error.' [Citation.] [¶] Here, the Court of Appeals, while making passing reference to the harmless-error doctrine, did not apply it. Its analysis failed to strike the balance between disciplining the prosecutor on one hand, and the interest in the prompt administration of justice and the interests of the victims on the other." (*United States* v. *Hasting*, *supra*, 461 U.S. at p. 509 [76 L.Ed.2d at p. 106.]) Apart from this reference to its prior decision in *Hasting*, the *Rose* court also cited to its previous holding in *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 684-685, 106 S.Ct. 1431], where it noted: " 'The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence [citation], and promote public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error

50 (1970) ("Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it").' " (*Rose* v. *Clark, supra,* 478 U.S. at p. 577 [92 L.Ed.2d at p. 470.)[5]

---

[5]Other United States Supreme Court decisions have emphasized, in other contexts, the problems inherent when any reversible error per se rule is applied. In *United States* v. *Lane* (1986) 474 U.S. 438, 445-446 [88 L.Ed.2d 814, 823-824, 106 S.Ct. 725], in a case involving misjoinder of offenses, the court held: "The Court's holding in *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (1967), made a significant change in the law of harmless error. There, Justice Black, speaking for the Court, emphasized that even 'some constitutional errors [may] be deemed harmless, not requiring the automatic reversal of the conviction.' [Citation.] In rejecting the automatic reversal rule, the Court stated: [¶] 'We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. . . . *We decline to adopt any such rule.*' [Citation] (emphasis added). [¶] Justice Black went on to note that all 50 States follow the harmless-error approach, and [¶] 'the United States long ago through its Congress established . . . the rule that judgments shall not be reversed for "errors or defects which do not affect the substantial rights of the parties." [Citation.] None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules.' [Citation] (footnote omitted). [¶] Since *Chapman,* we have 'consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.' [Citation.]" (Original italics.) In *United States* v. *Mechanik* (1986) 475 U.S. 66, 72 [89 L.Ed.2d 50, 57, 106 S.Ct. 938], a case involving an excessive number of witnesses appearing before the grand jury in which it was unsuccessfully argued such error was reversible per se, the Supreme Court held: "The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences. [Citation.] The '[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible.' [Citation.] Thus, while reversal 'may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution,' [citation], and thereby 'cost society the right to punish admitted offenders.' [Citation.] Even if a defendant is convicted in a second trial, the intervening delay may compromise society's 'interest in the prompt administration of justice,' [citation], and impede accomplishment of the objectives of deterrence and rehabilitation. These societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue or innocence. But the balance of interest tips decidedly the other way when an error has had no effect on the outcome of the trial." As can be noted from the body of this opinion, we conclude this is a case where the error, the failure to advise defendant as to the problems he may encounter while representing himself, had "no effect on the outcome of the trial." (*Ibid.*)

In *Morris* v. *Slappy* (1983) 461 U.S. 1, 14 [75 L.Ed.2d 610, 621-622, 103 S.Ct. 1610], the court held: "In its haste to create a novel Sixth Amendment right, the court wholly failed to take into account the interest of the victim of these crimes in not undergoing the ordeal of yet a third trial in this case. Of course, inconvenience and embarrassment to witnesses cannot justify failing to enforce constitutional rights of an accused: when prejudicial error is made that clearly impairs a defendant's constitutional rights, the burden of a new trial must be borne by the prosecution, the courts, and the witnesses; the Constitution permits nothing less. But in the administration of criminal justice, courts may not ignore the concerns of victims. Apart from all other factors, such a course would hardly encourage victims to report violations to the proper authorities; this is especially so when the crime is one calling for

When the *Chapman* standard is applied to the present case, reversal is not warranted. The *Chapman* test was described by the United States Supreme Court in *Yates* v. *Evatt*, *supra*, 500 U.S. at pages 402-403 [114 L.Ed.2d at page 448] as follows: "The *Chapman* test is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' *Id.*, at 24; . . . ; *Arizona* v. *Fulminante*, 499 U.S. 279, 296 [113 L.Ed.2d 302, 322-323, 111 S.Ct. 1246] (1991) (confession is harmless error if it 'did not contribute to [the defendant's] conviction'); *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681 [89 L.Ed.2d 674, 684-685, 106 S.Ct. 1431], (1986) (*Chapman* excuses errors that were ' "harmless" ' in terms of their effect on the factfinding process at trial)." The failure to advise defendant of the dangers of self-representation did not contribute to the verdict or have any effect on the factfinding process at trial. As noted previously, defendant did not desire to be represented by the counsel that was offered. A recitation of the dangers and disadvantages of self-representation would have led to the same result; he would have voluntarily proceeded in pro se. The trial would have still occurred with defendant representing himself. Nothing would have changed had defendant been advised of the dangers of self-representation.

Additionally, the present case involves error which should be subject to the general rule requiring constitutional error to be judged by the *Chapman* standard for the foregoing reasons articulated by *Rose* and the two pertinent cases cited therein, *Hasting* and *Van Arsdall*. The present case does not involve any question of defendant's guilt. The evidence he aided and abetted in the sale of the cocaine was uncontroverted. There is nothing in the record to indicate he did not commit the crime. More importantly, in terms of the waiver of counsel, the failure to advise him of the dangers of self-representation in compliance with *Faretta* had no effect on his decision to proceed in pro se or the ultimate guilty verdict. The aforementioned colloquy between defendant and the court without question proved he did not want the attorney

public testimony about a humiliating and degrading experience such as was involved here. Precisely what weight should be given to the ordeal of reliving such an experience for the third time need not be decided now; but that factor is not to be ignored by the courts. The spectacle of repeated trials to establish the truth about a single criminal episode inevitably places burdens on the system in terms of witnesses, records, and fading memories, to say nothing of misusing judicial resources. [¶] Over 75 years ago, Roscoe Pound condemned American courts for ignoring 'substantive law and justice,' and treating trials as sporting contests in which the 'inquiry is, Have the rules of the game been carried out strictly?' Pound, The Causes of Popular Dissatisfaction With the Administration of Justice, 29 ABA Ann. Rep. 395, 406 (1906). A criminal trial is not a 'game;' and nothing in the record of respondent's two trials gives any support for the conclusion that he was constitutionally entitled to a new trial. The state courts provided respondent a fair trial and the United States District Judge properly denied relief." This authority is inconsistent with defendant's contention that we should adopt a reversible error per se standard in the present case.

offered to him. She had represented him at the preliminary hearing and until the superior court arraignment. To reverse the judgment under such circumstances would, to paraphrase the words of former Chief Justice Traynor as quoted in *Rose*, bestir the public to ridicule such a decision. The constitutional error in the present case had no effect on the decision to proceed in propria persona and thoughtful observers of the justice system would honestly question the intelligence and sensibility of an automatic reversal rule in such circumstances.

As to the other consideration cited by former Chief Justice Traynor, the encouragement of litigants to abuse the system, the application of a reversible error per se test applied to the present case would do just that. California courts have consistently reported that the self-representation right granted by *Faretta* has been regularly abused and presented difficult problems for California trial and appellate courts. In *People* v. *Clark* (1992) 3 Cal.4th 41, 115 [10 Cal.Rptr.2d 554, 833 P.2d 561], our Supreme Court held: " 'Trial courts are not required to engage in game playing with cunning defendants who would present Hobson's choices.' *Faretta* . . . held generally that a defendant may represent himself. It did not establish a *game* in which defendant can engage in a series of machinations, with one misstep by the court resulting in reversal of an otherwise fair trial." (Italics added.) Other courts have noted that defendants often choose to transform the constitutionally guaranteed right of self-representation which is premised upon assuring the dignity of the accused into " 'the *Faretta* game.' " (*People* v. *Williams* (1990) 220 Cal.App.3d 1165, 1170 [269 Cal.Rptr. 705]; accord, *People* v. *Rivers* (1993) 20 Cal.App.4th 1040, 1049 [25 Cal.Rptr.2d 602]; *People* v. *White* (1992) 9 Cal.App.4th 1062, 1075 [12 Cal.Rptr.2d 122]; *People* v. *Lopez* (1981) 116 Cal.App.3d 882, 889-890 [172 Cal.Rptr. 374].) In the present case, defendant sought in fact to abuse the *Faretta* right. After announcing he was ready for trial and waiting for the jury to be summoned, defendant suddenly announced he no longer wanted to represent himself. In the unpublished portion of this opinion we, to nobody's surprise, have concluded the trial judge did not abuse his discretion in denying the last minute request for counsel. Further, defendant was given funds for legal materials for which he was unable to account when questioned by the trial judge how the money had been spent. Defendant then proceeded to ask for more public monies so the funds could be spent on "personal hygiene." The key point is that defendant's use of the *Faretta* right was in fact misused as it all too often is. To apply a reversible error per se standard in this context, where the result of the trial would have been the same, would reward defendant for his abuse of this constitutional privilege, the very danger of such a standard of review so accurately described by former Chief Justice Traynor a quarter century ago. Accordingly, because the failure to comply

with the *Faretta* requirement did not contribute to the verdict or affect the fact-finding process of the trial and the waiver of counsel was voluntary, the judgment must be affirmed. (*Delaware* v. *Van Arsdall, supra,* 475 U.S. at p. 681 [89 L.Ed.2d at pp. 684-685]; *Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)[6]

Defendant's second argument is that even if the reversible error per se test does apply, we must utilize what he argues is the reversible error standard articulated by the United States and California Supreme Courts and reverse because of the holdings of: *North Carolina* v. *Alford, supra,* 400 U.S. at page 31 [27 L.Ed.2d at pages 167-168]; *Brady* v. *United States, supra,* 397 U.S. at pages 747-748 [25 L.Ed.2d at pages 755-756]; and *People* v. *Howard, supra,* 1 Cal.4th at pages 1174-1180. The holdings of these cases were synthesized by our Supreme Court as follows: " '*Boykin* [v. *Alabama* (1969) 395 U.S. 238, 239-243 (23 L.Ed.2d 274, 277-280, 89 S.Ct. 1709)] does not require specific articulation of each of the three rights waived by the guilty plea, as long as it is clear from the record that the plea was voluntary and intelligent . . . .' [Citation.] There is wide agreement both on this point and on the applicable test: The record must affirmatively demonstrate that the plea was voluntary and intelligent under the totality of the circumstances. [Citations.]" (1 Cal.4th at p. 1178.) It is this black letter rule of law that defendant argues requires reversal in the present case because the "totality of the circumstances" fails to indicate the waiver of the right to counsel was "voluntary and intelligent." (*Ibid.*) To begin with, these three cases, and the body of constitutional decisional authority they reflect, involve the validity of guilty pleas—not the issue before this court, the standard of reversible error on direct appeal when there is a violation of the Sixth Amendment right as interpreted in *Faretta* to be advised of the dangers and disadvantages of self-representation before unequivocally asserting the opportunity in a timely manner to proceed in pro se where the waiver of the right to counsel is voluntary. As a result, they never even indirectly address the issue of what standard of reversible error we are required to apply in the *Faretta* context to a case on direct appeal. This body of decisional authority is not pertinent to the issue before us and is therefore not controlling. To sum up, we apply *Chapman* to defendant's voluntary waiver of the right to counsel where there was a failure to advise him of the dangers of self-representation and that error did not contribute to the verdict in a case of uncontroverted evidence of guilt. Since the error was harmless beyond a reasonable doubt, the judgment

---

[6]Apart from the theoretical jurisprudencial concerns raised by the application of the reversible error per se test to a voluntary waiver of the right to counsel, there are pertinent practical considerations. Defendant, a career criminal, must be held accountable for a life-long participation in violations of the law. To apply a reversible error per se test to his voluntary waiver of the right to counsel would be to elevate a rigid rule of process over the need for personal responsibility on defendant's part for his criminal conduct.

must be affirmed. (*Richardson* v. *Lucas*, *supra*, 741 F.2d at pp. 756-757; *People* v. *McArthur*, *supra*, 11 Cal.App.4th at pp. 628-630; *People* v. *Cervantes*, *supra*, 87 Cal.App.3d at pp. 291-294; accord, *Wilson* v. *Mintzes*, *supra*, 761 F.2d at pp. 284-285, fn. 15.)

The judgment is affirmed.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied June 19, 1995, and appellant's petition for review by the Supreme Court was denied August 24, 1995. Mosk, J., and George, J., were of the opinion that the petition should be granted.