924

Henry Lee CORDOVA, Petitioner–
Appellee,

v.

Leroy BACA, Sheriff of Los Angeles
County; Deanne Myers, Los Angeles
Superior Court Judge; Steven Cooley,
Los Angeles District Attorney; Bill
Lockyer, Attorney General of Califor-
nia, Respondents–Appellants.

No. 02–55713.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 2003.

Filed Oct. 6, 2003.

Matthew G. Monforton, Deputy District
Attorney, Los Angeles, CA, argued for the
respondents-appellants. Steve Cooley,
District Attorney of Los Angeles County,
George M. Palmer, Head Deputy District
Attorney, and Brentford J. Ferriera, Dep-
uty District Attorney, joined him on the
briefs.

Ronald S. Smith, Los Angeles, Califor-
nia, argued for the petitioner-appellee.

Before: HALL, KOZINSKI and
RAWLINSON, Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge:

We must evaluate under AEDPA a state
court's decision to apply harmless error
review where a criminal defendant was not
represented by counsel at trial, following a
defective waiver of his right to counsel.

### Facts

Petitioner Henry Cordova was arrested
outside his home after an altercation in-
volving his neighbors. He was handcuffed
by a Deputy Sheriff and placed in the back
seat of a patrol car. After the deputy
entered the car and sat in the driver's

seat, Cordova either sneezed (his story) or spit (the deputy's story), as a result of which something unsavory landed on the deputy's face.

Cordova was charged in the South Bay Municipal Court with three misdemeanor counts of battery—two on his neighbors, the third on the deputy. Cordova was not eligible for representation by the Public Defender, and he vacillated as to whether he would hire a lawyer or represent himself. The trial judge, everyone agrees, did not admonish him as required by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which held that a criminal defendant wanting to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

Cordova ended up representing himself. After a jury trial, he was acquitted of the two counts involving his neighbors but was convicted of battery on the deputy. The Appellate Division of the Los Angeles County Superior Court affirmed the conviction, even though it found that "the trial court committed error in failing to adequately advise [Cordova] of the dangers of self-representation" and the record was therefore "inadequate to ... demonstrate[ ] that appellant was sufficiently informed of the dangers of self-representation so as to make an intelligent and knowing waiver." App. Div. Order at 7. The Appellate Division, however, found that "the failure to advise the appellant of the dangers of self-representation was harmless beyond a reasonable doubt" under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), be-

cause "[t]here is nothing in the record to support a finding that the results would have been any different if appellant had been represented by counsel." App. Div. Order at 7–8. According to the Appellate Division, "[t]he case did not involve a sophisticated defense or complicated legal issues. It was simply a question of who would the jury believe." *Id.* at 8.

In petitions presented to the California Court of Appeal and California Supreme Court, Cordova argued that the Appellate Division should not have conducted harmless error review, but rather reversed automatically once it determined that he had not effectively waived his right to counsel. After the state courts denied him relief on this claim, he brought this habeas petition in federal court.[1] The district court granted the writ; it held that, once the Appellate Division had concluded Cordova's waiver was invalid, he was entitled to automatic reversal of his conviction. The state appeals, claiming that the Appellate Division's ruling did not contravene any Supreme Court case law directly on point, nor was its ruling an unreasonable application of that law under the alternative prong of AEDPA. 28 U.S.C. § 2254(d)(1).

## Discussion

It is so well established as to require no citation that a criminal defendant has a constitutional right to counsel at trial. It is also established by numerous Supreme Court cases that if a defendant is denied the right to counsel, that error is structural and calls for automatic reversal of the conviction; in other words, denial of the right to counsel at trial is not subject to harmless error review. *See, e.g., Penson v. Ohio*, 488 U.S. 75, 87–89, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Rose v. Clark*, 478

---

1. The state agrees that Cordova adequately   exhausted his state remedies.

U.S. 570, 578, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

■ The right to counsel, like other constitutional rights, may be waived. *Faretta,* 422 U.S. at 807, 95 S.Ct. 2525. However, unless and until a criminal defendant waives a particular right, he continues to have it. A botched waiver does not diminish or alter the right. An unwaived right is an unimpaired right.

Here, the state appellate court determined that Cordova did not effectively waive his right to counsel because the trial court did not give him proper warnings. *See* p. 925 *supra.* Cordova thus commenced the trial with his right to counsel intact. Because Cordova was tried without a lawyer, it follows ineluctably from Supreme Court cases such as *Rose* and *Penson* that his trial was infected by structural error, and the Appellate Division was wrong when it concluded the error was harmless.

The state argues vigorously that there is in fact *no* Supreme Court authority on point because no Supreme Court cases deal with the consequences of a defective *Faretta* waiver. In the absence of such authority, the state argues, the Appellate Division's harmless error review following a defective waiver was neither directly contrary to Supreme Court authority nor an unreasonable application thereof. *See* 28 U.S.C. § 2254(d)(1). But we do not need a Supreme Court case to tell us the consequence of a defective waiver; a defective waiver waives nothing and thus is of no consequence. *See Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("If the accused ... is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a ... bar to a valid conviction and sentence depriving him of his life or his liberty."). Cordova started out the pro-

ceedings with a right to counsel. Had he waived that right, the state *would then* have been entitled to try him without a lawyer. But the state appellate court found Cordova's waiver defective. This means that Cordova was entitled to counsel, yet was tried without one. And we do have Supreme Court authority squarely on point telling us that this kind of error is conclusively deemed prejudicial, so the conviction must be reversed automatically, without any inquiry as to whether the presence of a lawyer would have made a difference.

The state's confusion on this elementary point stems from its failure to distinguish between two separate steps in the analysis—the effect of a defective *waiver colloquy* and the effect of a defective *waiver.* As noted, the Supreme Court in *Faretta* held that, before a trial court accepts a defendant's waiver of the right to counsel, "he should be made aware of the dangers and disadvantages of self-representation." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. The Supreme Court has not told us whether a trial court's failure to give proper warnings automatically vitiates the waiver, as in the case of defective *Miranda* warnings, *see Miranda v. Arizona,* 384 U.S. 436, 492, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or whether the error is subject to harmlessness analysis—an inquiry into whether, despite the absence of proper warnings, the waiver was nonetheless valid, as in *United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

Because the Supreme Court has not spoken to the consequences of a trial court's failure to give proper *Faretta* warnings, a state court would be entitled to conclude that a defective waiver colloquy does not automatically result in a defective waiver—that a defendant's waiver was nonetheless knowing and voluntary, perhaps because defendant was well versed in the

criminal justice process. That, indeed, is the approach our own court has taken. *See United States v. Balough,* 820 F.2d 1485, 1488 (9th Cir.1987). But the Appellate Division concluded that the defective waiver colloquy here vitiated the waiver.[2] It then proceeded to apply harmless error analysis to the next stage in the proceedings—determining whether the outcome of the trial would have been different had petitioner been represented. But that is exactly what the Supreme Court has told us appellate courts may not do.

The distinction between harmless error analysis at the waiver colloquy stage and that at the waiver stage is illustrated by *People v. Dennany,* 445 Mich. 412, 519 N.W.2d 128 (1994)—a case on which the state erroneously relies. *Dennany* was actually a consolidated case, and only the companion case—*People v. Jones*—dealt with our situation.[3] Jones had asked to represent himself, and the trial court allowed him to do so without first giving him proper warnings. The majority considered whether defendant's waiver might nevertheless have been valid, based on knowledge he may have acquired from other sources, but concluded that defendant's

prior experience with the criminal justice system was not sufficient to render the lack of a warning harmless. *Dennany,* 519 N.W.2d at 143 n. 26. It therefore held that the waiver was invalid. *Id.*[4] However, when it came to the next step in the analysis—determining the effect of the invalid waiver—the Michigan Supreme Court applied a rule of automatic reversal. *Id.* at 143.

All but one of the remaining cases on which the state relies are equally unhelpful to its position. *Richardson v. Lucas,* 741 F.2d 753 (5th Cir.1984), did apply harmless error analysis to a case involving a defective waiver of the right to counsel, but it preceded the Supreme Court's opinions in *Rose* and *Penson,* and thus cannot stand for the proposition that *Rose* and *Penson* are not controlling on this point. Even worse from the state's perspective, the only authority *Richardson* cited was a Tenth Circuit case, *United States v. Gipson,* 693 F.2d 109, 112 (10th Cir.1982). *Gipson* was subsequently overruled by the Tenth Circuit, relying on the intervening authority of *Penson.* *See United States v. Allen,* 895 F.2d 1577, 1579–80 (10th Cir.

---

**2.** It is unclear whether the Appellate Division concluded that the defective waiver colloquy resulted in a defective waiver because it found no evidence in the record that the waiver was, nonetheless, knowing and intelligent, or whether it did so because it did not appreciate the distinction. Whatever the reason, the fact remains that the Appellate Division found the waiver defective.

**3.** *Dennany* itself dealt with the converse situation—whether the trial court had erroneously denied defendant the right to represent himself—and the part of the opinion dealing with Dennany's case says nothing relevant to us.

**4.** A concurring justice, by contrast, concluded that defendant *did* have sufficient education and experience, so that the trial court's failure to give proper warnings was indeed harmless and the waiver was valid. *Id.* at 152 (Boyle,

J., concurring in part and dissenting in part). Justice Boyle's concurrence did state that, had the waiver not been effective, the absence of counsel at trial might be reviewed for harmless error. *Dennany,* 519 N.W.2d at 152 & n. 13. Aside from the fact that this was a hypothetical speculation in a concurring opinion, not a holding by the majority as the state implies in its brief, Justice Boyle's analysis on this point rested entirely on two federal authorities, *United States v. Gipson,* 693 F.2d 109, 112 (10th Cir.1982), and *Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984). As further discussed below, neither of these authorities survive the Supreme Court's opinions in *Rose* and *Penson.* See pp. 927–28 *infra.* More significant, however, is that even the concurrence fully understood that *separate* harmless error inquiries must be made at the waiver colloquy and waiver stage of the analysis.

1990). We have every confidence that the Fifth Circuit will reconsider its position in *Richardson* when it next revisits the issue.

The state, finally, relies on three cases from the California intermediate appellate courts.[5] One of these, *People v. Noriega*, 59 Cal.App.4th 311, 69 Cal.Rptr.2d 127 (1997), had no occasion to rule on the issue because the parties there agreed that the harmless error standard applied. *Id.* at 321, 69 Cal.Rptr.2d 127. *People v. McArthur*, 11 Cal.App.4th 619, 14 Cal.Rptr.2d 203 (1992), actually undermines the state's position. The *McArthur* court clearly recognized that harmless error review presents different issues at the waiver colloquy and waiver stages of the analysis—and thus treated them separately. The court first quoted from the clearly defective waiver colloquy at the start of the trial. *Id.* at 625–27, 14 Cal.Rptr.2d 203. Despite the shortcomings in the trial court's admonitions, the *McArthur* court concluded that defendant's waiver of counsel at trial was valid because he "was well educated and experienced in legal procedures." *Id.* at 627, 14 Cal.Rptr.2d 203. The court further noted, however, that defendant had been given no warnings at all at his arraignment, *id.* at 628 & n. 1, 14 Cal.Rptr.2d 203, and, therefore, there was no valid waiver of the right to counsel at that stage of the proceedings. The court then went on to consider whether that error was structural or subject to harmlessness review.

In concluding that the error was not structural, *McArthur* recognized the teaching of *Rose* where "the United States Supreme Court ... stated denial of the right to counsel is an error which 'necessarily render[s] a trial fundamentally unfair.'" *Id.* at 629, 14 Cal.Rptr.2d 203

(quoting *Rose*, 478 U.S. at 577, 106 S.Ct. 3101) (citation omitted). *McArthur* did not find this portion of *Rose* dispositive because, in its view, denial of counsel merely at the arraignment differed materially from denial of counsel at trial. The most one can say about *McArthur*, then, is that it did not speak to the question presented to us; it would be more accurate, however, to say that *McArthur* recognized that harmless error review was not appropriate where defendant was denied counsel at trial, but was appropriate where defendant was denied counsel during a less central portion of the proceedings.

This leaves *People v. Wilder*, 35 Cal. App.4th 489, 41 Cal.Rptr.2d 463 (1995), on which the state places its principal reliance. *Wilder* did hold that a defective *Faretta* waiver is subject to harmless error review, but its reasons are not persuasive. *Wilder* first seems to say that *Rose* is not binding on this point because the issue was not squarely presented there. *See id.* at 498–99, 41 Cal.Rptr.2d 463. However, *Rose* is just one in a long line of Supreme Court cases holding that denial of counsel is structural error, yet the *Wilder* court considered only *Rose*. *See* p. 929 *infra*. *Wilder* did not consider *Penson*, which came two years after *Rose* and reiterates the point with even stronger force. The Tenth Circuit found *Penson* so conclusive that it overruled its earlier contrary cases without going en banc. *Allen*, 895 F.2d at 1580 n.1.

*Wilder* also conflated harmless error analysis at the waiver colloquy stage with harmless error analysis once the waiver is deemed to be invalid. Thus, the court concluded that "[a] recitation of the dangers and disadvantages of self-representa-

---

5. We note that the state's recitation of California appellate cases on this issue is not complete. The state does not cite cases such as *People v. Hall*, 218 Cal.App.3d 1102, 1108–09, 267 Cal.Rptr. 494 (1990), and *People v. Lopez*, 71 Cal.App.3d 568, 571, 138 Cal.Rptr. 36 (1977), which go the other way.

tion would have led to the same result; he would have voluntarily proceeded in pro se. The trial would have still occurred with defendant representing himself. Nothing would have changed had defendant been advised of the dangers of self-representation." *Id.* at 502, 41 Cal. Rptr.2d 463.[6] This sounds like a finding that the failure to give proper warnings was harmless and the waiver was therefore valid. Perhaps not satisfied with this conclusion, *Wilder* then went on to hold that, even in the face of an invalid waiver, harmless error review applies. *Id.* at 502–03, 41 Cal.Rptr.2d 463. Its reasons for so concluding are not persuasive. The court was concerned with the fact that "the self-representation right granted by *Faretta* has been regularly abused and presented difficult problems for California trial and appellate courts." *Id.* at 503, 41 Cal. Rptr.2d 463. But the kind of manipulations the court described had absolutely no connection to warnings defendant may have been given. Indeed, manipulation presupposes knowledge and an ability to work around the rules, and a defendant who knows enough to manipulate will very likely be one whose waiver will be deemed voluntary, despite any defect in the admonitions given by the court. This hardly seems like a justification for holding that, even where a defendant does not enter a knowing and intelligent waiver, and is thus denied the right to counsel through no

fault of his own, the error will be subject to harmlessness review.

■ The state argues vigorously that, whether or not we agree with *Wilder*, its interpretation of Supreme Court case law is not unreasonable and we must therefore accord it deference. This is not so. Federal courts owe substantial deference to state court interpretations of federal law only under the alternative prong of AEDPA, which asks whether the state court's ruling amounts to an "unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Our ruling, however, rests on the first prong of the test, namely that the state court's ruling is "contrary to" a long line of Supreme Court cases—not merely *Rose* and *Penson*, but also *Chapman* itself, 386 U.S. at 23 & n. 8, 87 S.Ct. 824, *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *superseded on other grounds by statute, as recognized by Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), among others. Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority—as opposed to an unreasonable application thereof—is a question of federal law as to which we owe no deference to the state courts. *See*

---

**6.** We note that *Wilder* gave no reasons in the record for this conclusion. Unlike other cases that have carefully examined the defendant's education and experience in concluding that warnings from the court would not have mattered, *see, e.g., Balough*, 820 F.2d at 1485; *McArthur*, 11 Cal.App.4th at 619, 14 Cal.Rptr.2d 203; *see also Dennany*, 519 N.W.2d at 152 (Boyle, J., concurring in part and dissenting in part), the *Wilder* court simply stated its conclusion without providing any support for it. However, the Supreme Court's insistence that trial courts give warn-

ings as to the dangers of self-representation pre-supposes that *some* defendants may be swayed to change their minds. It's possible, of course, to say that the warning would not be effective in particular circumstances, such as where the defendant has legal training or much experience with the criminal justice process, but it's quite a different matter to reach such a conclusion based solely on the court's assumption that the warnings wouldn't have mattered anyhow. The latter is simply not consistent with the Supreme Court's teachings in *Faretta*.

*Williams v. Taylor,* 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A] federal court [is] unconstrained by § 2254(d)(1) [where] the state-court decision falls within that provision's 'contrary to' clause.").[7]

In sum, we conclude that if a criminal defendant is put on trial without counsel, and his right to counsel has not been effectively waived, he is entitled to an automatic reversal of the conviction. The reason for the denial—whether it be an oversight on the part of the court, a failure to give proper warning or some other reason—is irrelevant. What matters is that the defendant was put on trial without a lawyer though the Constitution guarantees him that right. That is the kind of defect in the trial process the Supreme Court has told us time and again cannot be unscrambled. The Appellate Division's effort to analyze the evidence and determine what would have happened, had Cordova been represented by counsel, is precisely the kind of inquiry the Supreme Court has said cannot be made. Automatic reversal of the conviction is the only lawful remedy.

**AFFIRMED.**

---

7. That having been said, *Wilder* is enough of an outlier, and its reasoning is sufficiently suspect, that we would have little hesitation in concluding that it is also an unreasonable application of federal law as announced by the Supreme Court, under the alternative prong of AEDPA.