ACCEPTED
03-15-00203-CR
8186166
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/10/2015 3:54:22 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00203-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 12:28:22 PM
JEFFREY D. KYLE
Clerk

# In the
# Court of Appeals for the Third Supreme Judicial District at Austin, Texas

---------------------------------------------------------------------------------------------------------

**STATE OF TEXAS V. RONNIE HUE MONTGOMERY**

**On Appeal from the 147TH Judicial District Court, Travis County**

**Trial Court Cause No. D-1-DC-13-202988**

# APPELLANT'S BRIEF

**Rickey D. Jones**
**Attorney for the Appellant**
**Bar I.D. No. 00787791**
**1910 Pacific Ave, Ste 15100**
**Dallas, Texas 75201**
**Telephone: (210) 710-7062**
**Facsimile: (866) 589-0541**
**Email: rickey@satx.rr.com**

**APPELLANT REQUESTS ORAL ARGUMENT**

## Identity of the Parties and Counsel

**Appellant**
MR. RONNIE HUE MONTGOMERY

**Trial Counsel**
PRO SE
MR. RONNIE HUE MONTGOMERY


MR. THOMAS WEBER
Attorney at Law
SBOT NO. 21044950
8214 Briarwood Lane
Austin, Texas 78757
Phone: (512) 206-0504
STANDBY ATTORNEY FOR THE DEFENDANT

**Appellate Counsel**
MR. RICKEY D. JONES
SBOT No. 00787791
1910 Pacific Ave, Ste 15100
Dallas, Tx 75201
Telephone: (210) 710-7062
Fax: (214) 742-5956

**Trial and Appellate Counsel**
MS. RYANN ADELE REAUD
Assistant District Attorney
SBOT NO. 24065953
- and -
MS. EMILY RUTH EDWARDS
Assistant District Attorney
SBOT NO. 24069666

TRAVIS COUNTY DA'S OFFICE
509 W. 11th Street
Austin, Texas 78767
Phone: (512) 854-9400
Fax: (512) 854-4206
ATTORNEYS FOR THE STATE

## TABLE OF CONTENTS

Identities of Parties and Counsel……………………………………......…………2

Table of Contents………………………………………………….……………...4

Index of Authorities…………………………………………………………….....4

Statement Regarding Oral Argument………………………………………………6

Statement of the Case.......................................................................................…...6

Issue Presented...................................................................................................….7

Statement of Facts...........................................................................................…....7

Summary of Argument...................................................................................…....13

Argument……………………………………………………………………….15

      No record exists that shows: a) that the Court gave Appellant adequate
      Faretta warnings before he signed his Waiver of the Right to Counsel,
      or: b) that Appellant's waiver was made knowingly and
      intelligently……………………………………………………………...17

Conclusion……………………………………………………………………...23

Certificate of Service…………………………………………………………...25

## Index of Authorities

Texas Rules of Appellate Procedure 38, *et seq*…………………………………6

Texas Rules of Appellate Procedure 39.1………………………………………6

Texas Rules of Appellate Procedure 44.2………………………………………14

Texas Rules of Criminal Procedure, Article 1.051……………………………..7, 13

Texas Constitution, Article 1, Section 10………………………………………7, 16

United States Constitution, Sixth Amendment…………………………………7, 16

**Cases**

*Cordova v. Baca*, 346 F.3d 924 (9th Cir.2003)……………………….........18, 19

*Faretta v. California,* 422 U.S. 806…………………………………...8, 13, 14

*Manley v. State*, 23 S.W.3d 172, (Tex. App.—Waco 2000)……………….8, 14, 15

*United States v. Balough*, 820 F.2d 1489 (9th Cir. 1987)……………….......19-21

*United States v. Virgil*, 444 F.3d 447, (5th Cir. 2006)……………….....,…...22, 23

*Williams v. State*, 252 S.W.3d 353 (Tex. Crim. App. 2008)……………....16-18, 22

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

COMES NOW, Ronnie Hue Montgomery, Appellant in this cause, by and through his attorney of record, Rickey Jones, and, pursuant to the provisions of TEX. R. APP. PRO. 38, *et seq.*, files this brief on appeal.

## Statement Regarding Oral Argument

Pursuant to Texas Rules of Appellate Procedure 39.1, Appellant requests oral argument and submits that it would materially aid the decisional process in this case.

## Statement of the Case

Appellant was charged by indictment with the offense of evading arrest with a vehicle, alleged to have been committed in Travis County, Texas on or about the 31st day of May 2013.[1] The entire trial, both the guilt/innocence phase and the punishment phase, occurred on March 3, 2015.[2] Appellant waived his right to counsel on January 26, 2015. There is no record that shows either that Appellant received proper Faretta warnings or that his waiver was made knowingly and intelligently—on or before the day he signed the waiver. The two Faretta warning events that did take place as a matter of Record, both took place long after Appellant signed his Waiver of the Right to Counsel; and both events are

---

[1] Reporter's Record Vol. 3. page 134
[2] The entire trial, both phases, are in the Reporter's Record Vol. 3.

reminders that overtly refer to prior warnings that are not in the Record. Hence, this appeal raises one fundamental issue regarding a Defendant's right to a fair trial as guaranteed by the Constitutions of the United States and the State of Texas. Did Appellant knowingly and intelligently waive his right to counsel after receiving appropriate Faretta warnings?

## Issue Presented

This Appeal raises one critical issue which is governed by Article 1.051 of Texas Rules of Criminal Procedure, Article 1, Section 10 of the Texas Constitution, and the Sixth Amendment of the United States Constitution:

> There is no trial court record below that shows Appellant received proper Faretta warnings prior to his Waiver of the Right to Counsel or that Appellant's waiver of his right to counsel was knowingly and intelligently asserted.

## Statement of Facts

The jury found the defendant, Mr. Montgomery, guilty of the offense of evading arrest with a vehicle as alleged in the indictment, and assessed his punishment at confinement in the Texas Department of Criminal Justice Institutional Division for a period of five years, and assessed a fine of zero dollars. And, further, the jury found that Mr. Montgomery has never been convicted of a felony in this state or any other state; and therefore, the jury recommend community supervision.

The single issue this Court must determine is whether, under the particular facts and circumstances of this case, Appellant made his decision to waive counsel voluntarily, knowingly, and intelligently after receiving proper Faretta warnings before he waived his right to counsel. *Faretta,* 422 U.S. at 835, 95 S. Ct. 2525.

The key fact here is that there is no record of any Faretta hearing on or before the day Appellant executed the WAIVER OF RIGHT TO COUNSEL. Appellant's WAIVER OF RIGHT TO COUNSEL was signed on the 26th of January, 2015.[3]

Hence, no evidence exists to show either that Appellant was adequately warned on or before the day the Court granted Appellant's WAIVER OF RIGHT OF COUNSEL. Likewise, no evidence exists to establish whether Appellant's waiver was made "knowingly, intelligently, and voluntarily" as required under Faretta.[4]

Regarding the facts related to the charge against Appellant, the following testimony by Appellant at RR Vol 3, 97:21-100:4 covers Appellant's view of the incident in question:

Q All right. Did you know that Officer Borne was trying to stop you?
A No, I didn't.

---

[3] Clerk's Record, page 49

[4] *Faretta,* 422 U.S. at 835, 95 S. Ct. 2525 (citing *Von Moltke v. Gillies,* 332 U.S. 708, 723-24, 68 S. Ct. 316, 92 L. Ed. 309 (1948); *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942); *Johnson v. Zerbst,* 304 U.S. 458, 464-65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).

Q Did you see his lights?

A No, I didn't.

Q Did you hear him -- his sirens or hear him talking to you?

A No, I didn't.

Q Okay.

A I heard him talking to me once I pulled over because I was already in my music.

Q Okay. So you had music playing. Is that correct?

A Yes.

Q And would you say that music was very quiet or very loud?

A It was loud enough for me to contain and no noise on the highway. I like to ride.

Q You had two children in the car with you?

A Yes. Seat belts -- I make sure they put their seat belts on before we leave the house. We may not have car seats all the time because I know they don't need it or they're not a baby. They don't need car seats no more.

Q Were you talking to them while you were driving?

A No. We was all listening to music. We was all bumping together.

Q Okay. What does that mean, "bumping together"?

A We was all driving. We was all just enjoying the ride.

Q Okay. And so when was the first time you were aware that the officer was behind you?

A When I seen him on Cameron Road exit.

Q Was that after you got off of the highway?

A That was right there on the exit ramp. I was getting ready to look in my mirror. I seen a vehicle with his lights on. So I said, "I've got to pull over." And I pulled over to the side. "Okay, man, I've got to go to McDonald's but he's right there." So I had to pull over because he's behind me.

Q So you saw the video where he was behind you and then he later caught back up with you and you saw where he turned on his lights and everything and you stopped immediately. Is that correct?

A Yes. Once I noticed that he was behind me, I immediately pulled over.

Q Okay. Did you try to drive off once you realized he was behind you?

A No.

Q Did you do anything to avoid him or evade him?

A No.

Q Okay. So you had never seen him before.

A Never seen him. No, I never seen him.

Due to his indigence, the Court assigned attorney Tom Weber as Appellant's stand-by counsel on February 12, 2015.[5]

The first record of any Faretta discussion is dated March 2, 2015. Below, for the Court's convenience, is the Reporter's Record of the entire transcript held on the 2nd day of March, 2015, Vol. 1(A): SUPPLEMENTAL REPORTER'S RECORD WARNING OF SELF REPRESENTATION, which occurred more than four weeks after the day when Appellant had officially waived his right to counsel, which was accomplished on January the 26th of 2015.

The March 2nd, 2015 hearing begins with a plain statement in the form of a question by the Court, which shows that the Court is merely reminding Appellant of some prior event of which there is no record.

Pages 4:6-6:25

THE COURT: Mr. Montgomery, just to go over with you again, to be clear on the record, we are going to begin jury selection at 1:30. Also, **I wanted to go over one other thing on the record and that is, that—we have gone over extensively with you the risks and dangers of representing**

---

[5] Clerk's Record, page 81

**yourself and you indicated that you still want to represent yourself; is that correct?** (Emphasis added)

MR. MONTGOMERY: Yes, sir.

THE COURT: Even though that is the case and all of the things that I have gone over with you, I have appointed Mr. Weber to be a stand-in. In the event that you change your mind and you want representation, I wanted him to be here for you during the trial and to listen to the trial, so that he can jump in if at any time you decide you want representation, then he will be able to represent you. Do you understand that?

MR. MONTGOMERY: Yes, sir.

THE COURT: And you are still going to represent yourself; is that what you are saying?

MR. MONTGOMERY: Yes, sir.

THE COURT: I need to let you know that in representing yourself, you have an absolute right to do that. I have warned you against it, because I think it is a better course to have somebody represent you, but you still say you want to represent yourself; is that right?

MR. MONTGOMERY: Yes.

THE COURT: So given that, I just have to let you know that during jury selection and everything, I cannot change the rules for you. You will be held to the same rules of evidence and same rules of law. Do you understand that?

MR. MONTGOMERY: Yes.

THE COURT: I can't give you any assistance, and I can't help you out in any way; however, you can consult with Mr. Weber. But in terms of questioning witnesses and cross-examining witnesses and conducting voir dire examination, there can't be no hybrid, like, there can't be a joint effort between you and Mr. Weber. So if you are representing yourself, you are representing yourself. Do you understand that?

MR. MONTGOMERY: Yes.

THE COURT: You can consult with Mr. Weber, but you are representing yourself, and only one person can be the one questioning the witnesses and to stand up and conduct the voir dire examination and select a jury. Do you understand that?

MR. MONTGOMERY: Yes.

THE COURT: And you still want to do that yourself?

MR. MONTGOMERY: Yes.

THE COURT: Okay. So what we are going to do is, be back here a little before 1:30 because we will start selecting the jury at 1:30 this afternoon. All right?

MR. MONTGOMERY: Okay.

THE COURT: Do you have any questions of me?

MR. MONTGOMERY: No.

THE COURT: Okay. Why don't you plan to be back here at 1:15, so that you can consult with Mr. Weber on any questions that you may have. And, again, it can't be a hybrid representation, but at any time you want him to represent you, he is here so that he can begin to represent you if that time comes that you want him to. Do you understand?

MR. MONTGOMERY: Yes, sir.

There is, however, immediately prior to voir dire yet another episode where the Court admonishes Appellant regarding the difficulties of self-representation and expresses a strong opinion that Appellant should reconsider and allow Attorney Weber, his assigned stand-by counsel to conduct the trial.[6] Nevertheless, all these warnings came weeks after 24 year old Mr. Montgomery had decided to represent himself. Undeniably, the above hearings occurred after Appellant signed his Waiver of the Right to Counsel. Hence, there is no evidence anywhere in the entire

---

[6] See Reporter's Record Vol. 2 at 5:17-7:16

record that shows Appellant's waiver was "knowing and voluntary" at the time it was signed.

## Summary of Argument

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. Moreover, the right to counsel may be waived; and the defendant represent himself at trial.[7] Although the right to self-representation is absolute, a waiver of the right to counsel will not be "lightly inferred," and **the courts will indulge every reasonable presumption against the validity of such a waiver.**[8] (Emphasis added). The question arises: What is the proper test for a valid waiver of counsel?

The *Faretta* requirements are: (1) the appellant makes a "knowing and intelligent" waiver; and (2) the appellant must be made aware of the "dangers and disadvantages of self-representation."[9] To decide whether a defendant's waiver is knowing and intelligent—the court must make an inquiry, evidenced by the record—which shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel as well as the ability to appreciate the

---

[7] *Faretta v. California,* 422 U.S. 806, 821; 95 S. Ct. 2525, 2534; 45 L.Ed.2d 562 (1975).
[8] *Manley v. State*, 23 S.W.3d 172, 173 (Tex. App. —Waco 2000) citing: *George v. State,* 9 S.W.3d 234, 236 (Tex. App.--Texarkana 1999, no pet.) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464; 58 S. Ct. 1019, 1023; 82 L. Ed. 1461 (1938), and *Jordan v. State,* 571 S.W.2d 883, 884 (Tex.Crim.App.1978)).
[9] Id. at 173 (citing TEX.CODE CRIM. PROC. ANN. art. 1.051 (Vernon Supp.1999)); *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541.

13

practical disadvantage he will confront in representing himself.[10] The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver.[11] (Emphasis added).

While it is not mandatory that the warnings be given in writing—**it is mandatory that the record clearly shows that the defendant understands the consequences of his waiver.**[12] The purpose of the "knowing and voluntary" inquiry is to determine whether the defendant actually *does* understand the significance and consequences of his waiver of the right to counsel.  As the Faretta Court held, "...defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"[13] Hence, such an inquiry must be made before the defendant signs such a waiver.

In the present matter, there is no record of any Faretta warnings given prior to Appellant executing his Waiver of the Right to Counsel. And, since no Faretta warning hearing was held before he executed his waiver, likewise there is no showing in the record that Appellant understood the consequences of his waiver as

---

[10] Id at 173-74 (emphasis added) citing: *George*, 9 S.W.3d at 237 (citing *Archie v. State,* 799 S.W.2d 340, 344 (Tex. App.--Houston [14th Dist.] 1990), aff'd, 816 S.W.2d 424 (Tex.Crim.App.1991)).
[11] Id. at 174
[12] Id. at 174 citing: *Goffney v. State,* 812 S.W.2d 351, 352 (Tex. App.--Waco 1991), aff'd, 843 S.W.2d 583 (Tex.Crim.App.1992).
[13] *Faretta v. California,* (422 U.S. at 835, 95 S. Ct. 2525) quoting *Adams v. United States ex rel. McCann,* (317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)).

14

required by law. Hence, Appellant is entitled to a reversal and remand for a new trial.

## Argument

No error, other than federal constitutional errors labeled as structural by the United States Supreme Court, i.e., those involving "fundamental constitutional systemic requirements," is categorically immune to harmless error analysis.[14] The Supreme Court has defined such requirements in part as those which, when denied, "defy analysis by 'harmless error' standards;" moreover, a complete denial of counsel falls within this category.[15] Hence, the *Manley* Court held:

> **Allowing a defendant to proceed pro se without properly determining whether he has knowingly and intelligently waived his right to counsel is as critical as forcing a defendant to proceed to trial without the presence of counsel.** We believe that the failure to properly admonish a defendant on the dangers and disadvantages of self-representation is error involving "fundamental constitutional systemic requirements" and is categorically immune to a harmless error analysis.[16] Thus, we forego any attempt to apply Rule of Appellate Procedure 44.2 to this error. (Emphasis added)

In anticipation of the State's argument in favor of harmless error analysis, Appellant now provides an analysis of the law that appears to support a harmless error beyond a reasonable doubt standard in *Faretta*-warning cases. The key case

---

[14] Id. at 175 citing: *Salinas v. State,* 980 S.W.2d 219, 219 (Tex.Crim.App.1998); *Foster v. State,* 8 S.W.3d 445, 446 (Tex. App.--Waco 1999, no pet.) (Citing *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex.Crim.App.1999)).

[15] Id. at 175 citing: Foster, 8 S.W.3d at 446 (citing *Arizona v. Fulminante,* 499 U.S. 279, 309-10, 111 S. Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)).

[16] Id. at 175 citing: *Faretta*, 422 U.S. at 816-23, 95 S. Ct. at 2532-35; *Salinas*, 980 S.W.2d at 219.

appears to be *Williams v. State*, 252 S.W.3d 353 (Tex. Crim. App. 2008). The

*Williams* case was granted review specifically to determine whether the Trial

Court's refusal to apply a harm analysis was proper; and the Texas Court of

Criminal Appeals held that it was correct in the *Williams* case to refuse to perform

a harmless beyond a reasonable doubt analysis.[17]

First, the *Williams* Court affirmed that:

1. "'[C]ourts indulge every reasonable presumption against waiver' and ...'do not presume acquiescence in the loss of fundamental rights.'"[18]
2. The trial judge is responsible for determining whether a defendant's waiver is knowing, intelligent, and voluntary.[19]
3. To assess whether a waiver is effective, courts consider—the totality of the circumstances.[20]
4. This means that courts must examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[21] (In the present matter, no such examination was conducted.)

Moreover, the *Williams* Court explicitly affirmed the following:

A complete denial of the constitutional right to counsel at trial is a structural

defect that affects the framework of the trial.[22] When the right to trial counsel has

been violated, prejudice is presumed because the trial has been rendered inherently

unfair and unreliable.[23] So although most constitutional errors are subject to a harm

---

[17] *Williams v. State*, 252 S.W.3d 353, 354 (Tex. Crim. App. 2008).

[18] Id. at 356 citing: Zerbst, 304 U.S. at 464, 58 S. Ct. 1019.

[19] Id. at 356 citing: Zerbst, 304 U.S. at 465, 58 S. Ct. 1019.

[20] Id. at 356

[21] Id. at 356 citing: *Zerbst*, 304 U.S. at 464, 58 S. Ct. 1019.

[22] Id. at 357 citing: *Johnson v. United States*, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon*, 372 U.S. at 339-47, 83 S. Ct. 792); *Arizona v. Fulminante*, 499 U.S. 279, 309; 111 S. Ct. 1246; 113 L.Ed.2d 302 (1991).

[23] Id at 357 citing: *Satterwhite v. Texas*, 486 U.S. 249, 256; 108 S. Ct. 1792, 100 L.Ed.2d 284 (1988); *Cronic*, 466 U.S. at 659-61, 104 S. Ct. 2039.

analysis,[24] the complete denial of the right to counsel at trial is not.[25] In accord with this principle, we have recognized that—when the record does not affirmatively show that the defendant was sufficiently admonished as required by *Faretta*, it is reversible error, not subject to a harm analysis.[26] (Emphasis added).

The *Williams* Court stated: "By holding that Williams' waiver of her right to trial counsel was not made knowingly, intelligently, and voluntarily, the court determined that her waiver was invalid.[27] The State does not challenge this holding, and although it characterizes the error as one involving insufficient admonishments, the particular error at issue concerns instead an invalid waiver of the right to counsel."[28]

---

[24] Id at 357 citing: *Chapman v. California*, 386 U.S. 18, 24; 87 S. Ct. 824; 17 L.Ed.2d 705 (1967); *Rose v. Clark*, 478 U.S. 570, 576-77; 106 S. Ct. 3101; 92 L.Ed.2d 460 (1986) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684; 106 S. Ct. 1431; 89 L.Ed.2d 674 (1986) ); *Rushen v. Spain,* 464 U.S. 114, 118; 104 S. Ct. 453; 78 L.Ed.2d 267 (1983) (per curiam); *United States v. Hasting,* 461 U.S. 499, 508-09; 103 S. Ct. 1974; 76 L.Ed.2d 96 (1983); *Moore v. Illinois,* 434 U.S. 220, 232; 98 S. Ct. 458; 54 L.Ed.2d 424 (1977); *Milton v. Wainwright*, 407 U.S. 371; 92 S. Ct. 2174; 33 L.Ed.2d 1 (1972); *Chambers v. Maroney*, 399 U.S. 42, 52-53; 90 S. Ct. 1975; 26 L.Ed.2d 419 (1970); *Hopper v. Evans*, 456 U.S. 605, 613-14; 102 S. Ct. 2049; 72 L.Ed.2d 367 (1982); see generally *Johnson v. State*, 169 S.W.3d 223, 229-33 (Tex.Crim.App.2005).

[25] Id at 357 citing: *Gideon*, 372 U.S. at 339-47; 83 S. Ct. 792; *Cronic*, 466 U.S. at 659; 104 S. Ct. 2039; see also *Clark*, 478 U.S. at 578; 106 S. Ct. 3101.

[26] Id at 357 citing: *Goffney*, 843 S.W.2d at 584-85; *Powell v. State*, 632 S.W.2d 354, 355 (Tex.Crim.App.1982); *Johnson v. State,* 614 S.W.2d 116, 117-19 (Tex.Crim.App.1981); *Lisney v. State*, 574 S.W.2d 144, 145-47 (Tex.Crim.App.1978).

[27] Id at 358

[28] Id. at 358 and by way of a footnote, the Court advised: See *Cordova v. Baca,* 346 F.3d 924, 926-27 (9th Cir.2003) (discussing the difference between a defective *Faretta* colloquy and an ineffective waiver of the right to trial counsel—and noting the potential application of a harmless error analysis to a defective *Faretta* colloquy to find an effective waiver); see also *United States v. Virgil*, 444 F.3d 447, 456-47 (5th Cir.2006) (recognizing that a defective waiver colloquy, as opposed to a defective waiver, may be subject to a harmless error analysis).

However, in its footnote number 38, the *Williams* Court specifically identifies the two cases upon which it relies regarding the issue of the rare exception cases where a *Faretta*-warning might be subject to a harmless beyond a reasonable doubt standard: *Cordova v. Baca*, 346 F.3d 924 (9th Cir.2003) and *United States v. Virgil*, 444 F.3d 447 (5th Cir.2006). For the sake of thoroughness, Appellant will now briefly review this question: Do rare exceptions exist where the harmless error beyond a reasonable doubt standard would apply in a *Faretta*-warning case?

After fully reviewing the case law cited by the State in its contention that a harmless error standard applied regarding the short-comings of the *Faretta*-warnings at the trial, the *Cordova* Court rejected all of the State's examples and concluded:

> In sum, we conclude that if a criminal defendant is put on trial without counsel, and his right to counsel has not been effectively waived, he is entitled to an automatic reversal of the conviction. **The reason for the denial--whether it be an oversight on the part of the court, a failure to give proper warning or some other reason--is irrelevant.** What matters is that the defendant was put on trial without a lawyer though the Constitution guarantees him that right. That is the kind of defect in the trial process the Supreme Court has told us time and again cannot be unscrambled. The Appellate Division's effort to analyze the evidence and determine what would have happened, had Cordova been represented by counsel, is precisely the kind of inquiry the Supreme Court has said cannot be made. Automatic reversal of the conviction is the only lawful remedy.[29]

---

[29] *Cordova v. Baca,* 346 F.3d 924, 930 (9th Cir.2003). (Emphasis added)

Moreover, the *Cordova* Court addressed the issue of a 5th Circuit holding that did find a harmless error analysis applied to defective waiver of counsel; and the *Cordova* Court specifically stated that they had "every confidence the Fifth Circuit will reconsider its position…" The *Cordova* Court stated:

> All but one of the remaining cases on which the state relies are equally unhelpful to its position. *Richardson v. Lucas,* 741 F.2d 753 (5th Cir. 1984), did apply harmless error analysis to a case involving a defective waiver of the right to counsel, but it preceded the Supreme Court's opinions in *Rose* and *Penson,* and thus cannot stand for the proposition that *Rose* and *Penson* are not controlling on this point. Even worse from the state's perspective, the only authority *Richardson* cited was a Tenth Circuit case, *United States v. Gipson,* 693 F.2d 109, 112 (10th Cir. 1982). *Gipson* was subsequently overruled by the Tenth Circuit, relying on the intervening authority of *Penson. See United States v. Allen,* 895 F.2d 1577, 1579-80 (10th Cir. 1990).
> We have every confidence that the Fifth Circuit will reconsider its position in *Richardson* when it next revisits the issue.[30]

What is yet more, the *Cordova* Court cited *United States v. Balough* as a key aspect of its enquiry into the propriety of a harmless error analysis in *Faretta*-warning cases.[31] Hence, here we include, for the Court's convenience, relevant portions of the *Balough* analysis of the harmless error question:

> If a defendant chooses to represent himself, however, his decision must be made knowingly and intelligently; that is, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation, before his decision to waive counsel will be knowing and intelligent.[32]

---

[30] Id at 927-928.

[31] Id at 926-927 citing *United States v. Balough*, 820 F.2d 1485 (9th Cir. 1987)

[32] *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987) citing *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir.1983), cert. denied, 467 U.S. 1209, 104 S. Ct. 2398, 81 L.Ed.2d 355 (1984); *Harris*, 683 F.2d at 324.

While acknowledging a limited exception where the harmless error rule would apply, the *Balough* Court stated: Our cases have consistently held, however, that this "limited exception [is] to be applied in rare cases."[33] And the *Balough* Court explicitly stated the true focus of enquiry. The Court stated: Throughout this inquiry, we—**must focus on what the defendant understood, rather than on what the court said or understood**.[34]

The *Balough* Court recited the relevant facts; and these facts represent a fact pattern highly similar, if not identical, to the facts of Appellant's trial. The *Balough* Court noted:

> In the case at bar, the district court did not specifically discuss the three elements with Balough at the hearing on his motion to appear pro se. Therefore, we must inquire into the record as a whole to determine whether Balough nonetheless sufficiently understood the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation, to waive his right to counsel knowingly and intelligently.[35]

Moreover, and again, highly similar to Appellant's trial, the *Balough* Court then based its decision on the following facts:

> Nothing in the record indicates that Balough has any legal training, specialized education, or unusual background which might make it apparent that he possessed a sufficient understanding of the disadvantages of self-representation. The government, however, argues that because Balough was assisted by counsel

---

[33] Id at 1488, citing *Harris*, 683 F.2d at 324; see also *Rylander*, 714 F.2d at 1005 ("It is an unusual case where, absent such a colloquy, a knowing and intelligent waiver of counsel will be found."); *Aponte*, 591 F.2d at 1250 ("It will be only the rare case ... in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge.").

[34] Id at 1487-88, citing *Harris*, 683 F.2d at 325; *Kimmel*, 672 F.2d at 722. (Emphasis added).

[35] Id at 1488.

up until the hearing on his motion to waive counsel, and had numerous previous felony convictions, he had ample opportunity to observe the advantages of representation and acquired extensive experience with the legal process. In Kimmel, we held that a well-educated defendant, who was assisted by advisory counsel throughout his case, who had been prosecuted several times before and had even represented himself in at least one case, could not be deemed to understand sufficiently the dangers and disadvantages of self-representation absent additional facts such as indicating that he had been informed about the risks of self-representation at some point previously. [36]

The *Balough* Court held that:

> As we noted in Kimmel, the mere fact that a criminal defendant has been repeatedly exposed to the legal process and has even represented himself before cannot, without more, suffice to support a finding of a knowing and intelligent waiver. Id. **Without some assurance that the defendant has been apprised of the dangers and disadvantages of self-representation, we cannot say that such a defendant has waived his right to counsel "with eyes open."[37]** (Emphasis added).

Furthermore, the *Balough* concurring opinion in footnote numbered 2 states:

> Even advanced education in a non-legal field or extensive experience in other sophisticated areas cannot suffice to show an adequate understanding of the disadvantages of self-representation. "An intelligent professional man may well be competent in his field and yet have no understanding of the law or legal procedures." *Harris*, 683 F.2d at 325 (physician did not adequately understand disadvantages of self-representation); see also *Rylander*, 714 F.2d at 1005 (corporate president); *Bird*, 621 F.2d at 991 (retired professor).

MR. MONTGOMERY was ONLY 24 YEARS OLD!!! What is yet more, nothing

in the Record indicates that he had any basis for actually understanding the

---

[36] Id at 1489, citing *Kimmel*, 672 F.2d at 722.

[37] Id. citing *Kimmel*, 672 F.2d at 722, and *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541; Bird, 621 F.2d at 991.

consequences of his waiver. Hence, like *Balough*, Appellant's case should be reversed and remanded.

Finally, the Texas Court of Criminal Appeals in *Williams* also cited the 5th Circuit opinion in *Virgil* for the notion that harmless error analysis is applicable to some cases.[38] The 5th Circuit in *Virgil* reversed its prior holding on the issue of the applicability of harmless error analysis in *Faretta*-warning scenarios. And it stated exactly where and when harmless error analysis *may* be applicable. Its reasoning is clear:

> Even without further discussion, it is sufficiently clear that these Supreme Court decisions, among others, have abrogated our holding in *Richardson* . *See generally Cordova v. Baca* , 346 F.3d 924, 927–28 (9th Cir. 2003) (discussing *Richardson* 's instability after the Supreme Court's decisions in *Rose* and *Penson* and stating "We have every confidence that the Fifth Circuit will reconsider its position in *Richardson* when it next revisits the issue.").
> To hold now, as our sister circuits have, that this type of *Faretta* error at *trial* is—**insusceptible to harmless error analysis** is not necessarily to hold that the same error at *sentencing* could never be harmless. Recognizing the distinction, though, we *see* only imperfect ways of drawing a line between the two.[39] (Emphasis added).

What is yet more, the *Virgil* Court explicitly held:

> *Richardson* is further undercut by the holdings of every other circuit to consider the issue, all of which have concluded that harmless error analysis is inapplicable to failure-to-warn *Faretta* violations.[40]

---

[38] See *Williams v. State*, 252 S.W.3d 353 (Tex. Crim. App. 2008), at footnote 38 citing *United States v. Virgil*, 444 F.3d 447 (5th Cir.2006).

[39] *United States v. Virgil*, 444 F.3d 447, 456 (5th Cir. 2006).

[40] Id at 455 citing: *See Allen,* 895 F.2d at 1579–80; *Strozier v. Newsome,* 871 F.2d 995, 997 & n.3 (11th Cir. 1989); *United States v. Balough,* 820 F.2d 1485, 1490 (9th Cir.1987); *United States v. Welty,* 674 F.2d 185, 194 n.6 (3d Cir. 1982).

Exactly so in the present matter. Appellant did not receive adequate *Faretta*-warnings at any time during his hearing on his pre-trial motion. Appellant did not get the mandatory 10 day pre-trial preparation period. And there is insufficient facts in the record to confirm the notion that Appellant had ever, in the underlying trial or in any prior trial, been adequately admonished regarding the *Faretta*-warnings requirements. Hence, the present matter is insusceptible to harmless error analysis. Therefore, reversal and remand is proper.

## Conclusion

What is more fundamental to American Criminal Jurisprudence, under both our Federal and State Constitutions, than the principle that every human being has an inalienable right to a fair trial?

The 5th Circuit has explicitly acknowledged that every other Federal Circuit Court to consider the issue has concluded that "…**harmless error analysis is inapplicable to failure-to-warn *Faretta* violations.**[41] (Emphasis added). As Benjamin Disraeli noted, "Justice is truth in action." Given the facts of this case, in the light of governing precedents, in keeping with our nation's commitment to justice, and to honor our oaths to support and uphold the Constitution, this Court should reverse and remand this case for a new trial.

---

[41] *United States v. Virgil*, 444 F.3d 447, 455 (5th Cir. 2006), citing: *See Allen ,* 895 F.2d at 1579–80; *Strozier v. Newsome ,* 871 F.2d 995, 997 & n.3 (11th Cir. 1989);
*United States v. Balough,* 820 F.2d 1485, 1490 (9th Cir.1987); *United States v. Welty ,* 674 F.2d 185, 194 n.6 (3d Cir. 1982).

Respectfully submitted,
Rickey Jones
1910 Pacific Ave, Ste 15100
Dallas, Texas 75201
210 710 7062
866 589 0541 facsimile

By:_____
    Rickey Jones
    State Bar No. 00787791
    Attorney for Ronnie Montgomery

## Certificate of Service

This is to certify that on December 10, 2015, a true and correct copy of the above and foregoing document was served on the Travis County District Attorney's Office, 509 W. 11th Street Austin, Texas 78767 by facsimile transmission.

_____
Rickey Jones

**CERTIFICATE OF COMPLIANCE**

Appellant's Brief is in compliance with Rule 9.4 of the Texas Rules of Appellate Procedure with a word count of 5,792 and Times New Roman typeface no smaller than 14-point font.

_Rickey D. Jones_

_____

Rickey Jones